[No. 8868. Department Two. December 7, 1910.]

G. F. HESSELGRAVE, *Respondent*, v. SAMUEL GINNETT *et al.*,
*Appellants*.[1]

PRINCIPAL AND AGENT—COMPENSATION—EVIDENCE—SUFFICIENCY. In an action for the services of an agent, the defense that the agent was to build bunkers costing $7,000, for the unloading of scows, is not made out where the testimony was vague, the agent could have been discharged at any time, and appears to have been discharged for other reasons.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered December 9, 1909, upon findings in favor of the plaintiff, in an action for an accounting. Affirmed.

*Craven & Greene*, for appellants.

*Abrams & Shamel*, for respondent.

RUDKIN, C. J.—For some time prior to the 23d day of July, 1908, the defendants, as copartners under the name and style of Whidbey Island Sand & Gravel Company, owned and worked sand and gravel pits on the island of that name. On the 12th day of May, 1908, a contract was entered into between the plaintiff and the defendants, under the terms of which the plaintiff was employed as agent for the defendants, to procure orders for and make sales of their product in the city of Bellingham and vicinity, superintend the unloading of scows, the delivery of sand and gravel, the making of collections, etc. In the beginning, and as long as the plaintiff remained in the employ of the defendants, the scows

[1]Reported in 111 Pac. 1064.

were landed or delivered on a gridiron at the end of Chestnut street, on the west side of the waterway in the city of Bellingham, from which the scows were unloaded under the supervision of the plaintiff. A portion of the sand and gravel delivered under the contract was taken directly from the scows by customers, but by far the greater portion was unloaded by the plaintiff. Material taken from the scows was to be sold for ninety cents per cubic yard, while that unloaded by the plaintiff was to be sold for one dollar per cubic yard. For sand and gravel unloaded from the scows by customers, the defendants were to receive fifty cents per cubic yard, and the remaining forty cents was to be divided equally between the plaintiff and the defendants. For sand and gravel unloaded by the plaintiff the defendants were to receive fifty cents per cubic yard for the material, the plaintiff ten cents per cubic yard for unloading, and the remaining forty cents per cubic yard was to be divided equally between the plaintiff and the defendants.

A corporation of the same name as the copartnership succeeded the copartnership in the latter part of July or early in August, and on or about the 23d day of September, the plaintiff was discharged and the corporation took charge of the business in the city of Bellingham on its own account. During the time the plaintiff was in charge at Bellingham, forty-eight scow loads of sand and gravel in all were delivered and sold, and the present action was instituted against the copartnership for an accounting, and to recover the balance due to plaintiff for commissions, etc. The case was tried before the court without a jury, and from a judgment in favor of the plaintiff, the defendants have appealed.

One of the principal contentions of the appellants is that the respondent agreed to procure a site for and construct bunkers with a capacity of 500 cubic yards, at the city of Bellingham, to aid in receiving the sand and gravel, unloading it from the scows, and reloading it on wagons for delivery, and that he failed and refused to comply with this part of his

contract. The court below found against this contention, and we think properly so. The parties agreed in the first instance that the scows should be delivered on the gridiron, and the testimony is very vague and uncertain as to the time when the bunkers were to be constructed or completed. The respondent was only employed during the pleasure of the appellants, and it seems unreasonable that he should be expected to go to an expense of $7,000 for constructing bunkers, when he might lawfully be discharged even before the bunkers were completed. Furthermore, it seems clear to us that the contract of employment was terminated and the respondent discharged for other and different reasons.

The next contention is that during a part of the period for which a recovery is sought the respondent was in the employ of the corporation. The court properly found against this contention also. Even the appellants themselves did not know definitely when they ceased to transact business as a copartnership and became a corporation, and how could the respondent know? The testimony shows clearly that the respondent was employed by the copartnership, and that he never agreed to become the servant of the corporation. Again, we think, the testimony clearly shows that the understanding of all parties concerned was that there should be no change in their relations until the corporation took charge at Bellingham after the discharge of the respondent. The court below awarded to the respondent the cost of the gridiron constructed for the purpose of receiving the scows, and we think such was clearly the agreement of the parties at the time the respondent was discharged.

The remaining questions go to the quantity of sand and gravel delivered, the amount received by the appellants, the cost of hauling, and many other items of small importance. Upon these issues the testimony was indefinite and uncertain, resulting chiefly from loose business methods and imperfect bookkeeping, but the case was very carefully tried and fully considered in the court below, and we are convinced that its

conclusion is as nearly correct as the circumstances of the case will admit of.   The judgment is therefore affirmed.

DUNBAR, CHADWICK, CROW, and MORRIS, JJ., concur.